**DUNN LAW FIRM**
Adam C. Dunn, #10926
Duane L. Ostler #6298
110 West Tabernacle
St. George, Utah 84770
Telephone: 435-628-5405
acdunn@dunnfirm.com
dlostler@dunnfirm.com
***Attorneys for Plaintiffs***

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE STATE OF UTAH**

| | |
|---|---|
| RAYMOND BENCE, an individual, and RAYMOND BENCE, Trustee of the Ray and Kathy Bence Trust dated January 12, 2001;<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF TOQUERVILLE, UTAH,<br><br>Defendant. | **COMPLAINT**<br><br>Civil No.: 4:25-cv-00137<br><br>Judge: ___________________ |

Plaintiffs RAYMOND BENCE, an individual, and RAYMOND BENCE, TRUSTEE OF THE RAY AND KATHY BENCE TRUST DATED JANUARY 12, 2001, by and through his attorneys of record, Adam C. Dunn and Duane L. Ostler of the Dunn Law Firm, hereby file this complaint against the City of Toquerville, Utah, Defendant, and alleges as follows:

**PARTIES, JURISDICTION, & VENUE**

1. Plaintiffs are Raymond Bence, an individual residing in the City of Toquerville, Utah, and is the Trustee of the Ray and Kathy Bence Trust Dated January 12, 2001 (hereinafter "Bence") which owns real property in Toquerville and has standing to bring this action.

2. Defendant is the City of Toquerville (hereinafter "Toquerville" or the "City"), which is in Washington County, Utah.

3. All actions complained of herein occurred in Washington County, State of Utah.

4. The real property that is the subject of the zone change at issue in this action is in the City of Toquerville, County of Washington, State of Utah.

5. Jurisdiction is proper in this court under 28 U.S.C. § 1331, § 1343.

6. Venue is proper in this court under 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATOIONS**

7. This action arises out of passage by the City Council of Toquerville of Ordinance 2025.XX, on November 5, 2025 (hereinafter "2025 zone change"), wherein, by a 3-2 vote, the City Council claimed to 'adopt and designate anew' a prior zone change which occurred on February 1, 2023 (hereinafter "2023 zone change"). The prior 2023 zone change pertained to properties in Toquerville owned by the Robert Browning Lichfield Family Limited Partnership (hereinafter "Lichfield") and changed the zoning from single family residential to highway commercial. *See* 2025 zone change ordinance attached as **Exhibit A**.

8. A timely challenge to the 2023 zone change was raised in state court by Plaintiffs within thirty days of its enactment on the basis that (a) it was illegal due to contract zoning related to secret promises by city officials to change the zone in exchange for Lichfield's gifting of land; (a) the city's failure to find 9 mandatory factors for a zone change in Toquerville Ordinance § 10-8-3 made it illegal; and (c) inconsistency with the city's mandatory general plan. This 2023 action is currently on appeal before the Utah Court of Appeals. Plaintiffs do not concede that any subsequent actions by the City, including the alleged general plan amendment in early 2024, cure or legitimize the defects in the 2023 zone change.

9. The 2025 zone change is intended to nullify the entirety of Plaintiffs' legal challenge on appeal, even if Plaintiffs wins his appeal. This is described in paragraph 2 of Ordinance 2025.XX which says, "If a court were to invalidate the original Highway Commercial Designation, the

City's Official Zoning Map is hereby amended and restated/redrawn to reflect the H-C zone designation for the Subject Lichfield Property." *See* Exhibit A. Plaintiffs dispute that Ordinance 2025.XX has any legal effect on the viability of their pending appeal and assert that the City's stated intention demonstrates retaliatory motive rather than lawful legislative purpose.

10. Accordingly, Defendant is attempting to render Plaintiffs' state court appeal futile unless Plaintiffs spends the time and money to commence new litigation and raise the same claims anew in response to this new 2025 zone change enactment and prevails in such a new and separate action.

11. The 2025 zone change has damaged Plaintiffs because: (1) the 2025 zone change, like the 2023 zone change before it, has decreased the property value of his parcel; and (2) the 2025 zone change seeks to interfere with and take legal claims owned by Plaintiffs which are pending before the Utah Court of Appeals.

12. Plaintiffs' property has suffered measurable diminution in appraisal value, reduced marketability, and loss of its prior residential buffer due to commercial encroachment facilitated by the City's actions.

13. These harms were foreseeable, intentional, and directly caused by the City's repeated legislative efforts to commercialize the land adjoining Plaintiffs' parcel.

14. Additionally, Plaintiffs' chose in action pending before the Utah Court of Appeals constitutes a vested property interest with independent economic and legal value, which the City sought to impair or extinguish by enacting Ordinance 2025.XX.

15. Plaintiffs have also incurred and will continue to incur increased legal expenses solely because the City attempted to undermine and avoid judicial review of their claims.

## HISTORY OF THE 2023 ZONE CHANGE

16. The Lichfield property at issue in Toquerville, Utah comprises approximately 11 acres in

three parcels. The northern part of parcel T-163-A-1-A is in two halves, split by a new Parkway, and has been zoned highway commercial for some time.

17. Prior to the 2023 zone change, the southern part of T-163-A-1-A which extended far south of the parkway and did not border any highway, was zoned as single family residential in the R-1-20 zone. The other two parcels of the property (T-168-E and T-163-A-2) extend even farther south below T-163-A-1-A and are far removed from any highway. The Toquerville zone map before the 2023 zone change, blown up on the parcels at issue, is attached as **Exhibit B.**

18. The Bence parcel, T-163-C-1-A is directly east of the Lichfield parcels. *See* Exhibit B.

19. As part of a contract zoning arrangement with city officials, in the fall of 2022, Lichfield filed an application to change the zoning of all of the parcels from residential to highway commercial.

20. The Planning Commission held a public hearing on the proposed zone change on January 11, 2023, and recommended denial of the zone change to the City Council.

21. The Toquerville City Council afterwards conducted two meetings on the proposed zone change on January 18 and February 1, 2023.

22. In these hearings the mayor and a councilman said the zone change was intended to give back some highway commercial zoning Lichfield lost when the City installed its new Parkway in the upper part of Lichfield's parcel T-163-A-1-A.

23. The City Council by a three-to-two vote granted the 2023 zone change to highway commercial for most of the property.

24. Bence thereafter filed a Petition in state court challenging the purported zone change due to contract zoning, failure to find the 9 mandatory factors in Toquerville Ordinance § 10-8-3, and inconsistency with the mandatory general plan which showed the rezoned area as being residential.

25. After both sides filed Motions for Summary Judgment, the state district court granted Toquerville's motion and upheld the zone change. Bence then appealed this decision, which is currently pending before the Utah Court of Appeals. *See* Brief of Appellant, Bence v. Toquerville, dated June 18, 2025, **Exhibit C**.

## THE 2025 ZONE CHANGE

26. Almost a year after the 2023 zone change, in early 2024 Toquerville purportedly amended its general plan. The City purported to amend its general plan in early 2024 in a manner *apparently designed* to provide post-hoc support for the 2023 zone change, while other maps and wording in the general plan were inconsistent with the 2023 zone change. Plaintiffs do not concede that this amendment was lawful, properly enacted, consistent with statutory requirements, or capable of retroactively validating the 2023 zone change.

27. In the fall of 2025, Toquerville City submitted to the Planning Commission for its consideration a proposed Ordinance 2025.XX which was said to be "an ordinance adopting/designating anew the highway commercial zone district for the subject Lichfield property as reflected in the 2024 General Plan." *See* Notice of Public Hearing for Planning Commission meeting on Oct. 22, 2025, **Exhibit D.** Plaintiffs dispute that the 2024 general plan map amendment created any legitimate basis for reenacting the 2023 zone change.

28. This proposed ordinance in its recitals described the prior history of the 2023 zone change and the purported general plan amendment in early 2024, then said: "WHEREAS, Raymond Bence, individually and as Trustee of the Ray and Kathy Bence Trust, dated January 12, 2001, has challenged in court the Highway Commercial Designation on the basis that City processes were not followed, including that at the time of the Highway Commercial Designation, a portion of the Subject Lichfield Property was not shown in the then General Plan as a potential commercial area."

*See* Exhibit A.

29. The numbered portions of the ordinance following the recitals then said "The Highway Commercial Zone for the Subject Lichfield Property is hereby adopted and designated anew," and further that "If a court were to invalidate the original Highway Commercial Designation, the City's Official Map is hereby amended and restated/redrawn to reflect the H-C zone designation for the Subject Lichfield Property." *Id*.

30. The City intended this action to attempt to render the entirety of Bence's pending appeal moot, and not just that part of it related to the general plan. Plaintiffs do not concede that Ordinance 2025.XX has any legal effect on the pending appeal or that it could moot judicial review of previously raised claims.

31. The only change between the 2023 zone change and the 2025 zone change was the alleged general plan amendment in early 2024. Plaintiffs dispute the validity, timing, and legal effect of this alleged amendment.

32. During the hearing, an alternate Planning Commission member noted that "the general plan was amended after the zone change and after the litigation was filed. That change was initiated by—not by a broad community demand. It was crafted in response to a legal challenge, and appears to be an effort to protect the city's interests in an earlier decision from judicial review." *See* "10.22.2025 "Special Planning Commission Meeting" YouTube Video at https://youtube.com/watch?v=EO2ZobGYAqA, at 1:01:46 – 1:02:10, (hereinafter "10/22/25 Meeting").

33. At the Planning Commission hearing, a commissioner asked the city attorney what was the "purpose in sending this to us?" *Id.* at 22:57 – 23:00.

34. The attorney responded, "So the purpose here … uhm … well … twofold … so, to be

candid, city council wants litigation to end." *Id*. at 23:01 – 23:18.

35. After this, the city attorney acknowledged that "one of the points, to be candid is, you know, if we were to designate this anew it—it opens the door for an argument that … uhm … for mootness essentially, that … uhm … the city in completely different circumstances has looked at this exact same zone change—a different set of circumstances, has looked at this zone change and approved it … and, you know … so it—it could be mootness, essentially, an argument for it … how do you undo a zone change that … uhm … was separately done at another time in different circumstances?" *Id*. at 1:13:05 – 1:13:43.

36. In answer to the question from the alternate commissioner, "It's also a way for the city to protect themselves during litigation, correct?" the city attorney said, "Yeah, it will be used as a litigation strategy if its approved. Absolutely. We'll be candid here. We're not hiding the ball." Id. at 1:16:09 – 1:16:18.

37. Ray Bence during the public comment period of the Planning Commission public hearing said that if Ordinance 2025.XX is enacted by the City Council he intended to once again oppose it in a legal action. *Id*. at 50:22 – 50:28.

38. As it had done in 2023, the Planning Commission again reviewed the 9 factors under subpart B of § 10 8-3 at its public hearing on Oct. 22, 2025, and again found that they were not met. Under subpart A of § 10 8-3, the Planning Commission then recommended denial of the proposed Ordinance 2025.XX. *Id*. at 1:25:10 – 1:26:28.

39. The City Council held a meeting on the issue (not a public hearing) on Nov. 5, 2025.

40. At the city council meeting on proposed Ordinance 2025.XX, one of the councilmen noted that "Mayor Sip is still working with Lichfield to complete … uhm … the property transfers." *See* "11.05.2025 "City Council Meeting" YouTube Video at

https://www.youtube.com/watch?v=47vf8GS02wk, at 1:58:56 – 1:59:01, (hereinafter "11/05/25 Meeting").

41. One councilman asked the city attorney, "Tell me the reason we're doing this." *Id*. at 2:06:04 – 2:06:06.

42. The City attorney responded, "To be candid, if you guys were to approve this, we will use it … uhm … as evidence that the prior zone change was potentially moot. If you guys do it, we will use it as that … uhm … but … so, we're not hiding the ball here." *Id*. at 2:06:25 – 2:06:38.

43. The councilman then asked, "So then, the reason this is here—" at which point the city attorney cut him off and said, "that's not the reason this is here tonight, though. You guys cannot vote on this and say 'we're doing this to get ourselves out of litigation' or something. You can't do that. So if you want to look at this and redesignate it you have the authority to do that." *Id*. at 2:06:39 – 2:06:52.

44. When the councilman then asked, "So do we need to go back and redesignate all of our other zoning changes then?" the attorney responded that they could do that, but it would set the city up for litigation. *Id*. at 2:06:52 – 2:08:27.

45. The mayor then commented, "So they want us to do this to say 'we did it right the first time, we're gonna do it right the second time, and we're gonna stick with what we did the first time.' That's what the attorneys are asking us to do." *Id*. at 2:09:09 – 2:09:20.

46. Ordinance 2025.XX also states the City Council "offers its opinion," which Plaintiffs dispute, that mandatory factual findings required under § 10-8-3 are met." One councilman asked whether a 'yes' vote for the ordinance would bind him as a councilman to the opinion on these 9 factors the ordinance said the council was expressing. The city attorney's response was that the council was not bound by the 9 factors. *Id*. at *Id*. at 2:09:53 – 2:10:46.

47. The City Council then approved Ordinance 2025.XX as written by a 3-2 vote. *Id*. at 2:15:35 – 2:16:35.

48. It was made clear to city officials before the passage of Ordinance 2025.XX that the *only* thing that has changed since 2023 is the general plan. There has been no change with respect to Bence's claims regarding contract zoning or the city's violation of its ordinances due to lack of mandatory findings by the Planning Commission required by § 10-8-3. Plaintiffs do not concede that any such change was lawfully enacted or that it bears any legitimate relation to the zoning requirements at issue.

49. Ordinance 2025.XX seeks to solidify the ongoing nature of the zone change even if Bence were to prevail on any of his 2023 claims, either by decision of the state appellate court or on remand. Plaintiffs deny that the City may lawfully insulate an unlawful zone change from judicial review through reenactment.

50. Ordinance 2025.XX thereby constituted an attempt to bypass and avoid all challenges raised by Bence in respect to contract zoning and not following city ordinances. This is due to the City's apparent desire to eliminate adjudication of these claims.

51. The only way to potentially avoid this result is for Bence to expend the time and money to contest Ordinance 2025.XX in new and separate litigation, arguing anew many of the very same points Bence is contesting in his challenge of the 2023 zone change

52. If Bence did not file new litigation to contest Ordinance 2025.XX, it is likely Toquerville would seek to have the state appeal set aside as moot. Accordingly, Toquerville's enactment of Ordinance 2025.XX was a bad faith effort to avoid and prevent Bence's claims from being heard. Plaintiffs do not concede that Ordinance 2025.XX moots any claims in the pending appeal or that the City's strategy has any lawful preclusive effect.

**<u>FIRST CAUSE OF ACTION</u>**
**(Ordinance 2025.XX was a Bill of Attainder against Bence)**

53. Plaintiffs reallege and reassert the allegations contained in the above paragraphs as if fully set forth herein.

54. Bills of attainder are prohibited in the United States Constitution. *See* United States Constitution, Art. I, Sec. 10.

55. 42 U.S.C. § 1983 provides a private cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution.

56. "A Bill of Attainder 'legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial'" *Diaz v. Lampela*, 601 Fed. Appx. 670, 676 (10th Cir. 2015) *citing Nixon v. Adm'r of Gen. Servs*., 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

57. "The Bill of Attainder Clause 'prohibit[s] legislatures from singling out disfavored persons and meting out summary punishment for past conduct.'" *Diaz* at 676, *citing Landgra v. USI Film Prods.*, 511 U.S. 244, 266, 114 S.C. 1483, 128 L.Ed.2d 229 (1994).

58. At the original enactment of the zone change in 2023, the City did not address inconsistency with the general plan.

59. When Bence subsequently filed his lawsuit in state court, inconsistency with the general plan was one of his arguments and continues as one of his arguments in the pending appeal. *See* Exhibit C.

60. The only difference between the enactment in 2023 and the "designating anew" enactment in 2025 is the purported general plan amendment in early 2024, and the city attorney made it clear to both the Planning Commission and City Council that they were being asked to "designate anew" the zone change due to this alleged difference. *See* 10/22/25 Meeting and 11/05/25 Meeting.

Plaintiffs dispute that the alleged amendment constitutes a substantive or legally meaningful difference.

61. At the 2025 Planning Commission meeting, an alternate Planning Commission member noted that "the general plan was amended after the zone change and after the litigation was filed. That change was initiated by—not by a broad community demand. It was crafted in response to a legal challenge, and appears to be an effort to protect the city's interests in an earlier decision from judicial review." *See* 10/22/25 Meeting, at 1:01:46 – 1:02:10.

62. If not for Bence's lawsuit, no such need to "designate anew" the zone change would have been perceived as being needful because only Bence has ever raised the issue of inconsistency between the zone change and the general plan.

63. Ordinance 2025.XX specifically identified Bence by name, because he had challenged the city's zone change by bringing a legal action against the same. *See* Exhibit A.

64. The apparent reason for Ordinance 2025.XX, as repeatedly stated by the city attorney and openly acknowledged by the mayor, was that this was a retaliation, to target Bence because of his lawsuit—particularly his pending appeal which is yet to be decided by the Utah Court of Appeals—out of a desire to make all the claims in that lawsuit moot, not just claims about the general plan. *See* above paragraphs on why Ordinance 2025.XX was provided to the Planning Commission and City Council for review and supporting 10/22/25 Meeting and 11/05/25 Meeting. Plaintiffs do not concede that any procedural or substantive defect from 2023 was cured or that the 2025 reenactment has lawful force.

65. Furthermore, the city's retaliatory purpose was expressly stated in paragraph 2 of the ordinance which said, "if a court were to invalidate the original Highway Commercial Designation, the City's Official Zoning Map is hereby amended and restated/redrawn to reflect the H-C zone

designation for the subject Lichfield Property." *See* Exhibit A.

66. Claims in a lawsuit constitute a 'chose in action' property right. *See Gilbert v. DHC Dev., LLC,* 2013 U.S. Dist. LEXIS 131321 (D. Ut. 2013) *citing Snow, Nuffer, Engstrom & Drake v. Tanasse*, 1999 UT 49, ¶8, 980 P.2d 208, 210 ("A 'chose in action' has been defined as 'a claim or debt upon which a recovery may be made in a lawsuit.").

67. The 2025 zone change was specifically intended to make Bence's entire lawsuit moot, not just that portion of it related to the general plan, and to take from him his property rights in that suit, and also to maintain the 2023 zone change which devalued his real property values. Plaintiffs dispute that the City's ordinance has any such legal effect.

68. The punishment in Ordinance 2025.XX of taking Bence's chose in action property right falls within the historical meaning of legislative punishment, was intentional, was enacted without the benefit of trial, and did not further any nonpunitive legislative purpose.

69. Toquerville's 2025 zone change in Ordinance 2025.XX was an illegal bill of attainder contrary to the U.S. Constitution, intended to punish Bence for his lawsuit. Accordingly, Ordinance 2025.XX should be declared unconstitutional and void. Plaintiffs do not concede that Ordinance 2025.XX has any lawful effect in the interim.

70. If Ordinance 2025.XX is upheld , Bence will be damaged by his claims currently pending in the Utah Court of Appeals being potentially rendered moot.

71. These damages include, without limitation, loss of the economic and legal value inherent in Plaintiffs' chose in action, substantial diminution of Plaintiffs' real property value, and forced expenditure of additional legal fees and costs caused solely by the City's retaliatory legislative effort to suppress Plaintiffs' judicial remedies.

72. The impairments to Plaintiffs' property interests were direct, intentional, and foreseeable

consequences of the City's conduct.

73. Pursuant to 42 U.S.C. § 1988, Plaintiffs should be awarded their reasonable attorney fees incurred in bringing this action.

74. Plaintiffs further seek compensatory damages for measurable loss of real property value, impairment of their vested appellate rights, and all consequential damages resulting from the City's unconstitutional bill of attainder.

**SECOND CAUSE OF ACTION**
**(Regulatory Taking)**

75. Plaintiffs reallege and reassert the allegations contained in the above paragraphs as if fully set forth herein.

76. Governmental takings are prohibited in the United States Constitution. *See* United States Constitution, Amendment V.

77. 42 U.S.C. § 1983 provides a private cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution.

78. As expressed above, the city's purpose in enacting Ordinance 2025.XX was to make Plaintiffs' appeal moot. *See* above paragraphs on why Ordinance 2025.XX was provided to the Planning Commission and City Council for review and supporting 10/22/25 Meeting and 11/05/25 Meeting. Plaintiffs dispute that the City's actions could lawfully affect the pending appeal.

79. Plaintiffs have a protectible interest in a recognized property right both of the value of their real property in Toquerville and of their chose in action, namely their lawsuit against Toquerville which is currently under appeal in state court.

80. Ordinance 2025.XX devalued Plaintiffs' real property and also took away his property rights in his pending appeal by attempting to render moot any result of that appeal that may be in his favor. Plaintiffs do not concede that the City's enactment has lawfully extinguished or

diminished their appellate rights but allege that the City intended this unlawful effect.

81. The devaluation of Plaintiffs' real property is substantial and quantifiable, reflecting the foreseeable impact of converting adjacent residential land into highway commercial use.

82. Plaintiffs' chose in action represents a distinct property right, and the City's targeted attempt to extinguish or undermine it constitutes a direct taking without compensation.

83. The City's enactment of Ordinance 2025.XX was a substantial interference with Plaintiffs' private property, both his real property and his chose in action, which destroyed or materially lessened the value of that property.

84. Plaintiffs' reasonable investment-backed expectations were significantly undermined, as the City acted with full knowledge that commercial upzoning would impose adverse impacts on adjacent residential properties and that interfering with Plaintiffs' appellate rights would diminish the economic value of his legal claims.

85. The city's action had a negative impact on Plaintiffs' property rights and interfered with his reasonable investment-backed expectations.

86. The harm was not incidental, accidental, or the result of market forces. Rather, the City acted deliberately and with the stated intent to protect itself from judicial review, foreseeably causing economic harm to Plaintiffs' real property and legal interests.

87. Toquerville's 2025 zone change in Ordinance 2025.XX was a taking of Plaintiffs' property without just compensation in violation of the federal takings clause, and therefore Ordinance 2025.XX should be declared unconstitutional and void.

88. If the Ordinance 2025.XX is upheld , Bence will be damaged by his claims currently pending in the Utah Court of Appeals being potentially rendered moot and therefore, the City should alternatively be obligated to pay just compensation to Bence for the taking of his property

rights.

89. Such compensation must include both the diminution in fair market value of Plaintiffs' real property and the value of Plaintiffs' impaired or destroyed chose in action, along with all consequential damages flowing from the City's unconstitutional taking.

90. Pursuant to 42 U.S.C. § 1988, Plaintiffs should be awarded his reasonable attorney fees incurred in bringing this action.

## THIRD CAUSE OF ACTION
**(Deprivation of Access to the Courts)**

91. Plaintiffs reallege and reassert the allegations contained in the above paragraphs as if fully set forth herein.

92. All citizens of the United States have the right to petition the government through the courts for redress of grievances.

93. This right is guaranteed by the First Amendment to the U.S. Constitution as applied to the states through the due process clause of the 14th Amendment.

94. 42 U.S.C. § 1983 provides a private cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution.

95. Acting under the law, Toquerville violated Bence's rights by improperly and without justification enacting Ordinance 2025.XX which seeks to undermine his pending appeal before the Utah Court of Appeals by seeking to render that appeal and all claims contained therein moot. Plaintiffs dispute that Ordinance 2025.XX has any lawful effect on ongoing judicial proceedings.

96. Ordinance 2025.XX deprived Bence of his rights, privileges or immunities secured by the Constitution and/or the laws of the United States, and Bence suffered injury thereby.

97. These injuries include denial of meaningful access to appellate review, forced

duplicative litigation expenses, impairment of Plaintiffs' vested appellate property rights, and the foreseeable loss of judicial remedies due to the City's deliberate attempt to circumvent the courts.

98. Ordinance 2025.XX should be declared unconstitutional and void as a deprivation of Bence's First Amendment right of access to the courts.

99. If the Ordinance 2025.XX is upheld , Bence will be damaged by his claims currently pending in the Utah Court of Appeals being potentially rendered moot and therefore, the City should alternatively be obligated to pay just compensation to Bence for this loss. Plaintiffs do not concede that any legislative action by the City can lawfully preclude judicial review of past zoning decisions.

100. Plaintiffs further seek damages for the loss of the opportunity to obtain a judicial determination of their claims, the impairment of their constitutional petitioning rights, and the economic consequences of the City's intentional obstruction of their access to the courts.

101. Pursuant to 42 U.S.C. § 1988, Plaintiffs should be awarded his reasonable attorney fees incurred in bringing this action.

102. Plaintiffs additionally seek compensation for increased litigation burdens and costs that were proximately caused by the City's unconstitutional effort to interfere with judicial review.

WHEREFORE, Plaintiffs pray as follows:

A. For a ruling that Ordinance 2025.XX was a bill of attainder targeting Bence and punishing him by rendering his lawsuit moot, and is therefore unconstitutional and void;

B. For a ruling that Ordinance 2025.XX was a taking without just compensation due to devaluing Bence's real property and taking from Bence his chose in action lawsuit, and is therefore unconstitutional and void;

C. For a ruling that Ordinance 2025.XX is unconstitutional and void as a deprivation of Bence's First Amendment right of access to the courts;

D. Due to findings above, for an order setting aside Toquerville's approval of Ordinance 2025.XX, to prevent the City from attempting to use legislative reenactment to evade judicial scrutiny of unlawful zoning actions;

E. Alternatively, for an award of damages payable to Bence for the taking by Toquerville of Bence's property right.

F. Plaintiffs also seek compensatory damages for diminution in real property value, impairment or destruction of Plaintiffs' vested chose in action, increased litigation expenses caused by the City's retaliatory conduct, and all consequential and special damages proven at trial.

G. For an order that Defendant pay Plaintiffs' reasonable attorney fees incurred in this action; and

H. For such other relief as this Court deems fair and equitable under the premises.

Plaintiffs further request prejudgment and post-judgment interest and any additional relief permitted under federal law.

DATED this 5th day of December, 2025.

**DUNN LAW FIRM**

/s/ Adam C. Dunn
ADAM C. DUNN
*Attorneys for Plaintiffs*